UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

NEW YORK COALITION TO
SAVE THE STEAM SHIP
UNITED STATES, INC.

   Plaintiff,

vs.                                        Case No. 3:25-cv-00212-MCR-HTC

OKALOOSA COUNTY, FLORIDA

   Defendant.
_____/

### OKALOOSA COUNTY, FLORIDA'S MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

Defendant, OKALOOSA COUNTY, FLORIDA (the "County"), by and through undersigned counsel, moves this Court, pursuant to Federal Rule of Civil Procedure 12(b) and in accordance with Local Rule 7.1(E), for an order dismissing Plaintiff's Complaint (Doc. 1) with prejudice, and in support states as follows:

1.     Plaintiff has filed a suit against the County, requesting this Court award "appropriate transient relief" and prohibit the County from using or working on its tangible property.

2.     Plaintiff cites no specific Federal, State, or common law basis supporting its extraordinary and unusual request for relief.

3. Regardless, Plaintiff lacks standing to bring its asserted claim, and Plaintiff has not and cannot state any claim for which relief can be granted.

4. Plaintiff's Complaint should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

5. In support of this Motion, Okaloosa County relies upon the Memorandum of Law incorporated herein.

**WHEREFORE**, Defendant, OKALOOSA COUNTY, FLORIDA, respectfully requests this Court enter an Order:

A. Dismissing Plaintiff's Complaint (Doc. 1), in its entirety, with prejudice;

B. Awarding the County its costs, pursuant to Federal Rule of Civil Procedure 54; and

C. Granting any other relief this Court deems just and proper.

## MEMORANDUM OF LAW IN SUPPORT OF DISMISSAL

### I.     INTRODUCTION.

The case involves the fate of a ship, the SS United States, which is owned by Okaloosa County. For nearly three decades, the vessel languished in a Philadelphia port and suffered irreparable damage. Okaloosa County purchased the vessel in August 2024 with the intention of remediating its hazards, then scuttling the vessel in the Gulf of Mexico to create the world's largest artificial reef. More than two months after the County bought the vessel and began preparing to transport it from Philadelphia, Plaintiff involved itself for the sole purpose of preventing the County from following through on its plans. Now, Plaintiff asks this Court to restrain the County from utilizing its tangible property as it desires, in the hope that the Federal Government may initiate eminent domain proceedings against the County. Plaintiff lacks standing to bring its present challenge, and even so, has not and cannot state a cause of action justifying its unprecedented and extraordinary relief.

### II.    LEGAL STANDARDS.

The County moves to dismiss Plaintiff's Complaint for lack of standing and for failure to state a claim, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively.

### A.     Lack of Standing / Subject Matter Jurisdiction.

Standing is a jurisdictional issue, thus "dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." Stalley v. Orlando Reg'l Healthcare Sys., 524 F.3d 1229, 1232 (11th Cir. 2008). A challenge to subject matter jurisdiction under Rule 12(b)(1) comes in two forms: facial or factual attack. Kennedy v. Floridian Hotel, Inc., 998 F.3d 1221, 1230 (11th Cir. 2021). A facial attack on the complaint requires the Court "merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990) (alternations and citations omitted). In comparison, a factual attack challenges "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." Id. (internal quotation and citation omitted). Through this Motion, the County challenges the sufficiency of Plaintiff's standing as asserted on the face of Plaintiff's Complaint.

Foundational principles regarding standing are that "Article III of the United States Constitution limits the judicial Power—and thus the jurisdiction of the federal courts—to Cases and Controversies and that the standing doctrine is an essential and unchanging part of the case-or-controversy requirement." Gardner v. Mutz, 962 F.3d

1329, 1338 (11th Cir. 2020) (internal quotations and citations omitted). Equally important are the necessary prerequisites to establish standing, which the United States Supreme Court set forth in <u>Lujan v. Defenders of Wildlife</u>:

> [T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

504 U.S. 555, 560–61 (1992) (internal quotations and citations omitted). As the party invoking this Court's jurisdiction, Plaintiff bears the burden of establishing all three required elements. <u>See</u> <u>id.</u> at 561.

      **B.**     **Failure to State a Claim.**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Federal Rule of Civil Procedure 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. To survive a Rule 12(b)(6) motion, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim

5

to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). A claim is facially plausible when the factual content allows the court to reasonably infer that the defendant is liable for the misconduct alleged. Id. Although when considering a motion to dismiss, the court must accept well-pleaded factual allegations as true and view those allegations in the light most favorable to the plaintiff, conclusory allegations and legal conclusions do not receive such deference. Bishop v. Ross Earle & Bonan, P.A., 817 F.3d 1268, 1270 (11th Cir. 2016).

### III. RELEVANT FACTS.

Commenced near the end of World War II and launched in 1952, the SS United States was designed and constructed to be a multi-purpose ocean liner. (Doc. 1, ¶ 16). The vessel conducted hundreds of transatlantic crossings before her retirement from active use in 1969. (Id.). Through the ensuing decades, multiple changes in ownership occurred, including the acquisition by The SS United States Conservancy (the "Conservancy") in 2011. (Id., ¶¶ 16, 18). Before the Conservancy's purchase, the vessel had been berthed along the north side of Philadelphia's Pier 82 since the 1990s. (Doc. 1-4, p. 2). After its 2011 acquisition, the Conservancy worked with developers to either refurbish the ship or otherwise develop it into a hotel, condominiums, or a multi-purpose venue. (Id., p. 4). Such

6

plans never came to fruition, and in 2024, the Conservancy and its vessel faced imminent eviction from Pier 82. (Id., p. 13). Then, the County stepped in.

In August 2024, the County bought the vessel from the Conservancy pursuant to a Purchase and Sale Agreement. (Doc. 1, ¶ 32; Doc. 1-5). Plaintiff was neither a party to nor beneficiary of that agreement between the County and the Conservancy. (See Doc. 1-5). The County purchased the vessel with the plan to sink the ship off the Florida coast and create the world's largest artificial reef. (Doc. 1, ¶¶ 6, 20). Before that could happen, however, the ship would undergo extensive cleaning, including being stripped of all non-metal components, oil, and harmful chemicals to ensure it passes regulatory inspections and is environmentally safe. (Id., n. 1) (citing Isaac Avilucea, New York preservationists beg Trump to save SS United States, AXIOS PHILADELPHIA (February 12, 2025) (URL omitted).[1]

Following the County's purchase, Plaintiff incorporated itself, under the laws of the State of New York, for the purpose of preventing the sinking or destruction of the SS United States. (Doc. 1, ¶ 1). Stated differently, Plaintiff's sole purpose is to interfere with the County's lawful use of its tangible property. Notwithstanding,

---

[1] When considering a motion to dismiss, the Court may properly consider sources that are cited and incorporated by reference in a complaint. Eckart v. Allstate Northbrook Indem. Co., No. 23-10753, 2023 U.S. App. LEXIS 33076, at *10 (11th Cir. Dec. 14, 2023) (unpublished) ("[A] court may look to an incorporated document at the motion to dismiss stage.").

Plaintiff does not plead any facts demonstrating that it or any of its members have any direct interest in and/or have any direct connection to the SS United States, apart from its members' generalized interest in the historic significance of the ship.

After purchasing the ship, the County transported the vessel from Philadelphia to a shipyard in Alabama where remediation work would commence to prepare the ship for sinking, including removal of its twin smokestacks and other parts of the ship's superstructure. (Doc. 1, ¶ 10). While transport was underway, on February 10, 2025, Plaintiff wrote to the United States Government and requested the Government to take "executive action by ordering the taking of [the SS United States] for public use." (Doc. 1-2). At present, Plaintiff has no knowledge "whether the Executive Branch of the United States is even aware of the Letter, let alone whether it is being considered." (Doc. 1, ¶ 9). Nevertheless, Plaintiff continues to maintain this action.

Plaintiff does not ask this Court to order the County to cease all work on the ship or even to stop the County from sinking the ship. Instead, Plaintiff seeks only "transient equitable relief" (Doc. 1, pp. 1, 11), and requests "only a relatively short and eminently reasonable delay" in removing the smokestacks and other parts of the ship's superstructure. (Id., ¶ 13). This "reasonable" delay, Plaintiff posits, would entail 90 days, but Plaintiff requests that this 90-day period begin upon the Executive Branch's "proper receipt and commencement of review" of Plaintiff's February 10th

letter. (Id., ¶¶ 43, 44). Recognizing the tenuousness of its position, Plaintiff avers that if "the Executive Branch [were] to communicate to this Honorable Court its intention not to take [the vessel] for public use," Plaintiff would dismiss this action. (Id., ¶ 42).

## IV. ARGUMENT.

### A. This Court Lacks Subject Matter Jurisdiction because Plaintiff Lacks Standing to Bring its Present Challenge.

Plaintiff lacks standing to maintain its action against the County. As noted above, one of the three requirements Plaintiff must show to establish standing is a demonstrable injury in fact. Plaintiff's Complaint fails to demonstrate Plaintiff has suffered such an injury, and thus, Plaintiff has not satisfied its burden to demonstrate standing. To establish an injury in fact, Plaintiff "must show that [it] suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, Inc. v. Robins, 578 U.S. 330, 339 (2016) (quoting Lujan, U.S. 504 at 560). Although they are related concepts, concreteness and particularity are different, and Plaintiff, nonetheless, must demonstrate both. Gardner, 962 F.3d at 1341.

### i. Concreteness.

As this Court has explained, for an injury to be concrete, it must be "'*de facto*' and 'real,' not merely 'abstract.'" Ladies Mem'l Ass'n v. City of Pensacola,

9

No. 3:20cv5681-MCR-EMT, 2020 U.S. Dist. LEXIS 160071, at *7 (N.D. Fla. Sep. 2, 2020) (referencing Gardner, 962 F.3d at 1341). "Moreover, purely psychic injuries arising from disagreement with government action do not meet the concreteness requirement." Id. (quotation and citations omitted).

In this case, Plaintiff disagrees with and objects to the County's actions in preparing its ship to be reefed. Plaintiff takes issue with the County's plans based upon the vessel's historical relevance to the Plaintiff's individual members, who would rather "preserve the vessel afloat, restore her, and make her a welcome site for the public to visit." (Doc. 1-2) (cleaned up).[2] Plaintiff further considers its efforts to preserve the SS United States as "not just a matter of preserving a historic vessel [but] about honoring the legacy of American Greatness and of the many who traveled on the vessel." (Id.). However, this vague and abstract difference in opinion between Plaintiff and the County about the best use of the County's property does not give rise to a concrete injury suffered by Plaintiff.

In Gardner v. Mutz, the United States Court of Appeals for the Eleventh Circuit considered a similar case in which several individuals and organizations filed suit and objected to the removal of a Confederate monument by a municipality.

---

[2] Though Plaintiff's Complaint makes passing reference to speculative environmental impacts, Plaintiff expressly does not assert or claim standing on this basis. (Doc. 1, ¶ 15).

Gardner, 962 F.3d at 1333. Those plaintiffs claimed that the removal of the monument infringed on their interests in preserving Southern history, vindicating the cause for which Confederate veterans fought, and protecting memorials to American Veterans. Id. at 1341. In affirming dismissal, the Eleventh Circuit determined that the plaintiffs' claimed injuries were "pretty amorphous" and "simply too abstract" to establish a concrete injury in fact.[3] Id. The appellate court further explained that merely disagreeing with the removal of the monument "does not alone give rise to a concrete injury for Article III purposes." Id.

Like the plaintiffs' claimed injuries in Gardner, which the Eleventh Circuit considered too abstract and amorphous, so too are Plaintiff's claimed injuries in this case. Plaintiff's simple disagreement with the County's decision to create an artificial reef, despite the vessel's historical relevance, does not amount to any concrete injury to the Plaintiff. See Gardner, 962 F.3d at 1341 ("[W]hile a concrete injury needn't necessarily be 'tangible,' the Court has consistently held that purely psychic injuries arising from disagreement with government action—for instance, 'conscientious objection' or 'fear'—don't qualify.") (internal citations omitted).

---

[3] The appellate court affirmed the trial court's without-prejudice dismissal of one claim. As to the other claim, the appellate court vacated the trial court's *with*-prejudice dismissal and instructed the trial court to dismiss that claim *without* prejudice.

### ii.     Particularity.

As to particularity, Plaintiff's purported injury must be distinct—rather than undifferentiated—to it, and Plaintiff must demonstrate it has "been directly affected apart from [its] special interest in the subject at issue." Gardner, 962 F.3d at 1342. (internal quotation omitted). The "test requires more than an injury to a cognizable interest;" it "requires that the party seeking review be [itself] among the injured." Lujan, 504 U.S. at 563. An injury is not particularized when the plaintiff is asking the court to "decide questions of broad social import that are shared by other citizens in equal measure." Garcia-Bengochea v. Carnival Corp., 57 F.4th 916, 923 (11th Cir. 2023) (internal citation omitted).

Looking again at Gardner, in addition to determining the plaintiffs who objected to the memorial's removal failed to set forth any concrete injury, the Eleventh Circuit also determined that the plaintiffs failed to allege any particularized injury. Gardner, 962 F.3d at 1341–42. The plaintiffs' "special interest in the subjects of Confederate history, veterans memorials, and the so-called 'Southern perspective'" did not amount to a particularized injury. Id. at 1342 (quotation omitted). "[G]eneralized desires to promote Southern history and to honor Confederate soldiers" did not distinguish the plaintiffs from other interested observers, and thus did not give rise to a particularized injury to confer standing. Id. at 1342–43.

Much like the Gardner plaintiffs' general interest in preserving Southern history, Plaintiff's general interest in preserving the SS United States and its history does not give rise to a particularized injury to invoke standing. Nor does Plaintiff's desire to "honor[] the legacy of American Greatness and of the many who traveled on the vessel." (Doc. 1-2). With its generalized interests in preservation and commemoration being undifferentiated from those of any other interested observers, Plaintiff is merely a "concerned [bystander] attempting to vindicate [its] value interests." Gardner, 962 F.3d at 1343. With nothing more, Plaintiff has not demonstrated a particularized injury, which is a required showing to establish standing.

### iii. Ladies Memorial Association v. City of Pensacola

Illustrative on the issue of injury in fact is the Eleventh Circuit's opinion in Ladies Memorial Association, Inc. v. City of Pensacola, 34 F.4th 988 (11th Cir. 2022), which upheld this Court's finding that plaintiffs lacked standing because they failed to demonstrate an injury in fact. This Court's Order on the City's Motion to Dismiss recited the allegations as follows: in 1887, the City of Pensacola adopted an ordinance that renamed a public park after Confederate General Robert E. Lee. Ladies Mem'l Ass'n, 2020 U.S. Dist. LEXIS 160071 at *2–*3 (N.D. Fla. Sep. 2, 2020). The City also approved the construction of a 50-foot tall cenotaph monument to honor several historic figures, including a former president of the Confederacy.

Id. at *3. In 2020, the City decided to revert the park's moniker to its original name and remove the Confederate monument. Id. A group of plaintiffs, which included organizations and individuals with an interest in preserving the monument, filed an action for declaratory and injunctive relief, which was later removed to this Court. Id. at *4–*5. This Court granted the City's motion to dismiss for lack of standing and failure to state a claim. Id. at *1.

The Eleventh Circuit upheld this Court's finding that the plaintiffs lacked standing because plaintiffs failed to establish any injury in fact. "Most of the plaintiffs' allegations of harm go only to the general disagreement with taking down the cenotaph and a general notion that such action by the government would violate their constitutional rights, both of which did not invoke standing." Ladies Mem'l Ass'n, 34 F.4th at 993. Moreover, the plaintiffs' contention that removal of the monument would hurt the preservation of Florida history was not concrete enough to establish standing. Id. "[T]he plaintiffs ultimately being sad about the cenotaph being taken down does not give rise to standing." Id.

Here, Plaintiff's generalized interest in preserving the history of the SS United States, as well as honoring its greatness and its travelers, is similar, if not almost identical, to the plaintiffs' generalized interests in Gardner and Ladies Memorial Association. This Court should apply the same analysis, reach the same conclusion, and similarly find that Plaintiff lacks standing because it has failed to establish any

injury in fact. "An interest unrelated to injury in fact is insufficient to give a plaintiff standing. Thus, a plaintiff without an injury in fact lacks Article III standing, and the federal courts do not have jurisdiction over his or her complaint." Stalley, 524 F.3d at 1232 (internal quotation and citation omitted). Accordingly, Plaintiff's Complaint should be dismissed in its entirety.

### B. Plaintiff's Complaint Fails to State a Claim for Which Relief May be Granted.

Even if this Court determines Plaintiff's Complaint sufficiently establishes standing to invoke this Court's subject matter jurisdiction, Plaintiff's Complaint still fails to state *any* cause of action. Plaintiff avers that it seeks "only a relatively short and eminently reasonable delay" of the County's work in remediating and preparing the SS United States. (Doc. 1, ¶ 13). And Plaintiff's "sole purpose" in maintaining the instant action is to provide the United States Government time to consider involuntarily taking the vessel from the County. (Id., ¶ 6). Though Plaintiff makes clear the relief it desires, Plaintiff's Complaint fails to state any cognizable cause of action for which such—or any—relief may be granted.

It is elementary that a complaint must give fair notice of a cause of action by providing a short and plain statement of the claim showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2). Though a plaintiff is not required to provide detailed factual allegations, a statement of claim must include plausible factual

15

allegations demonstrating all elements of the claim. Iqbal, 556 U.S. at 678. A plaintiff provides fair notice by including allegations that outline all elements of the claim. See id. (a pleading must provide more than an accusation that "defendant unlawfully harmed me."). The factual allegations supporting each element of a claim must be sufficient to make the claim plausible. Id. at 678–79. A claim is plausible on its face when the complaint contains factual content so as to allow the court to reasonably infer that the defendant is liable for the alleged misconduct. Id. at 678.

Woefully absent from Plaintiff's Complaint are any allegations supporting *any* cause of action. For example, Plaintiff does not allege that the County's actions are or will be in violation of any Federal or State statute, rule, or regulation, nor does Plaintiff allege that the County breached any agreement involving or concerning Plaintiff for which Plaintiff would be entitled to any relief. Plaintiff's Complaint asserts no more than the generic "I will be harmed" if the County is permitted to lawfully use its property as the County wishes. That is simply insufficient to state a claim. See Iqbal, 556 U.S. at 678. This Court may not even arrive at Plaintiff's unprecedented request for relief because Plaintiff's Complaint does not establish that it is entitled to any relief.

Plaintiff's Complaint references two Public Laws, 92-296 and 94-536, which purportedly evidence the Federal Government's "broad interest…in retaining [the vessel] afloat and intact well into the future." (Doc. 1, ¶¶ 36–38; Doc. 1-6). Even if

true, neither regulation creates a private right of action as to their provisions. Moreover, even if Plaintiff were to allege the County has acted in contravention of those Public Laws, any remedy for such a violation would be afforded to the Federal Government, not Plaintiff. To the extent Plaintiff's Complaint may be read to rely upon the cited Public Laws as a basis for its claim(s), such reliance is misplaced. Plaintiff has not pled, and cannot plead, any claim or cause of action so as to support its request for unusual relief.

Nevertheless, Plaintiff's request for delay is most analogous to a request for injunctive relief. (See Doc. 1, ¶ 47 (characterizing request as "transient equitable relief")). However, Plaintiff's Complaint fails to establish any legal basis authorizing this Court to exercise its equitable authority. Instead, Plaintiff expressly concedes—and the County agrees—its request is unprecedented. (Id.). Plaintiff's stated goal in this litigation is only to allow the United States Government an opportunity to consider exercising eminent domain over the County's property. Plaintiff's Complaint, however, points to no legal authority authorizing this Court to take such action to "buy time" strictly for the purpose of allowing a non-party to consider whether it should take any action. Because Plaintiff's Complaint fails to state a cause of action for any claim, dismissal is warranted.

### C. Plaintiff's Complaint Should be Dismissed with Prejudice.

Based on the above, Plaintiff's Complaint should be dismissed with prejudice. While leave to amend a complaint should be freely given (Fed. R. Civ. P. 15(a)), the Court "need not, however, allow amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001). This Court lacks subject matter jurisdiction to adjudicate the present dispute because Plaintiff lacks standing to bring the action. Even so, Plaintiff cannot state a cause of action for *any* claim so as to justify its requested relief. Consequently, any amendment would be futile, and Plaintiff's attempted claim should be dismissed with prejudice.

### V. CONCLUSION.

At its core, Plaintiff's Complaint asks this Court to restrain the County's lawful use of its property unless and until another entity takes up Plaintiff's cause. Plaintiff's request is unreasonable, unjustified, and unprecedented. There exists no basis in law or fact for such judicial interference with, or encroachment upon, the County's right to utilize its property for the benefit of its citizens. This Court should decline Plaintiff's invitation to create new law. Plaintiff's Complaint should be

dismissed with prejudice, and the County should be awarded its costs incurred in this action.

Respectfully submitted, this 28th day of March 2025.

/s/ *Elmer C. Ignacio*
ELMER C. IGNACIO
Florida Bar No. 537683
/s/ *Matthew R. Shaud*
MATTHEW R. SHAUD
Florida Bar No. 122252
Nabors, Giblin & Nickerson, P.A.
1500 Mahan Drive, Suite 200
Tallahassee, Florida 32308
(850) 224-4070
(850) 224-4073 (Facsimile)
eignacio@ngnlaw.com
mshaud@ngnlaw.com
legal-admin@ngnlaw.com

**COUNSEL FOR DEFENDANT,
OKALOOSA COUNTY, FLORIDA**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically filed with the U.S. District Court, Northern District of Florida, via the CM/ECF system, which will also serve a copy to all counsel of record, on this 28th day of March 2025.

/s/ *Elmer C. Ignacio*
ELMER C. IGNACIO

## LOCAL RULE 7.1(F) CERTIFICATION

I HEREBY CERTIFY that this motion contains 4,008 words, excluding the case style and certifications.

/s/ *Elmer C. Ignacio*
ELMER C. IGNACIO