# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

NEW YORK COALITION TO
SAVE THE STEAM SHIP
UNITED STATES, INC.

    Plaintiff,

vs.                                               Case No. 3:25-cv-00212-MCR-HTC

OKALOOSA COUNTY, FLORIDA

    Defendant.

_____/

## OKALOOSA COUNTY, FLORIDA'S MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

Defendant, OKALOOSA COUNTY, FLORIDA (the "County"), by and through undersigned counsel, moves this Court, pursuant to Federal Rule of Civil Procedure 12(b) and in accordance with Local Rule 7.1(E), for an order dismissing the Amended Complaint (Doc. 12) with prejudice, and in support states as follows:

1.      In its two-count Amended Complaint, Plaintiff asks this Court to prohibit the County from working on and using its tangible property (Count I), and to compel the County to apply for a permit under the Marine Protection, Research, and Sanctuaries Act (the "MPRSA" or the "Ocean Dumping Act") before undertaking specified work on the County's tangible property (Count II).

2.     Plaintiff fails to cite any applicable Federal, State, or common law basis upon which it is entitled to the extraordinary and unusual request for relief.

3.     Regardless, Plaintiff lacks standing to bring its claims and has failed to state a cause of action under either Count I or Count II.

4.     Therefore, the Court should dismiss Plaintiff's Amended Complaint, in its entirety, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

5.     In support of this Motion, the County relies upon the Memorandum of Law incorporated herein.

**WHEREFORE**, Defendant, OKALOOSA COUNTY, FLORIDA, respectfully requests this Court enter an Order:

A.     Dismissing Counts I and II of Plaintiff's Amended Complaint (Doc. 12), with prejudice;

B.     Awarding the County its costs, pursuant to Federal Rule of Civil Procedure 54; and

C.     Granting any other relief this Court deems just and proper.

<u>**MEMORANDUM OF LAW IN SUPPORT OF DISMISSAL**</u>

**I.    INTRODUCTION**

This case involves the fate of a ship, the SS United States, which is owned by Okaloosa County. For nearly three decades, the vessel languished in a Philadelphia port and suffered irreparable damage. Okaloosa County purchased the vessel in August 2024 with the intention of remediating its hazards, then scuttling the vessel in the Gulf of Mexico to create the world's largest artificial reef. More than two months after the County bought the vessel and began preparing to transport it from Philadelphia, Plaintiff involved itself for the sole purpose of preventing the County from following through on its plans. Plaintiff now asks this Court to restrain the County from utilizing its tangible property as it desires, in the hope that the Federal Government may initiate eminent domain proceedings against the County. Plaintiff lacks standing to bring its present challenge, and even so, has not and cannot state a cause of action justifying its unprecedented and extraordinary relief. Plaintiff also asks this Court to compel the County to apply for an inapplicable permit prior to conducting remediation work in advance of creating the artificial reef.

## II.    LEGAL STANDARDS

### A.    Lack of Standing / Subject Matter Jurisdiction

Standing is a jurisdictional issue, thus "dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." Stalley v. Orlando Reg'l Healthcare Sys., 524 F.3d 1229, 1232 (11th Cir. 2008). A challenge to subject matter jurisdiction under Rule 12(b)(1) comes in two forms: facial or factual attack. Kennedy v. Floridian Hotel, Inc., 998 F.3d 1221, 1230 (11th Cir. 2021). A facial attack on the complaint requires the Court "merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990) (alternations and citations omitted). In comparison, a factual attack challenges "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." Id. (internal quotation and citation omitted). Through this Motion, the County challenges the sufficiency of Plaintiff's standing as asserted on the face of Plaintiff's Amended Complaint.

Foundational principles regarding standing are that "Article III of the United States Constitution limits the judicial Power—and thus the jurisdiction of the federal

courts—to Cases and Controversies and that the standing doctrine is an essential and unchanging part of the case-or-controversy requirement." <u>Gardner v. Mutz</u>, 962 F.3d 1329, 1338 (11th Cir. 2020) (internal quotations and citations omitted). Equally important are the necessary prerequisites to establish standing, which the United States Supreme Court set forth in <u>Lujan v. Defenders of Wildlife</u>:

> [T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of— the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

504 U.S. 555, 560–61(1992) (internal quotations and citations omitted). As the party invoking this Court's jurisdiction, Plaintiff bears the burden of establishing all three required elements. <u>See</u> <u>id.</u> at 561.

### B.    Failure to State a Claim

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Federal Rule of Civil Procedure 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. To survive a Rule 12(b)(6) motion, a

complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). A claim is facially plausible when the factual content allows the court to reasonably infer that the defendant is liable for the misconduct alleged. Id. Although when considering a motion to dismiss, the court must accept well-pleaded factual allegations as true and view those allegations in the light most favorable to the plaintiff, conclusory allegations and legal conclusions do not receive such deference. Bishop v. Ross Earle & Bonan, P.A., 817 F.3d 1268, 1270 (11th Cir. 2016).

### C. The Court Has Authority to Consider Exhibits to a Motion to Dismiss and May Consider Such Evidence Without Converting this Motion into a Summary Judgment Motion

It is well within the Court's discretion to "consider documents referenced in the complaint, even if they are not physically attached, if the documents are (1) central to the complaint, and (2) no party questions their authenticity." Basson v. Mortg. Elec. Registration Sys., Inc., 741 Fed. App'x. 770, 771 (11th Cir. 2018) (unpublished) (citing Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005)). A document is central to a complaint when it is a "necessary part of [the plaintiff's]

6

effort to make out a claim." <u>Day</u>, 400 F.3d at 1276. When a defendant attaches documents meeting this standard to a motion to dismiss, the Court may consider the documents without converting the motion to dismiss into a motion for summary judgment. <u>See</u> <u>id.</u> at 1275–76; <u>see also</u> <u>Hi-Tech Pharms., Inc. v. HBS Int'l Corp.</u>, 910 F.3d 1186, 1189 (11th Cir. 2018).

Of course, the Court also has discretion to consider the exhibits as record evidence and, if it decides to do so, pursuant to the notice requirements of Rule 12(d) may convert this Motion into a motion for summary judgment. <u>Prop. Mgmt. & Ins., Inc. v. Lewis</u>, 752 F.2d 599, 604 (11th Cir. 1985) (citation omitted); <u>see also</u> Fed. R. Civ. P. 12(d). However, this Court may also "take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgment" when the proposed evidence consists of "public records that [are] 'not subject to reasonable dispute.'" <u>Horne v. Potter</u>, 392 F. App'x 800, 802 (11th Cir. 2010) (unpublished) (citing Fed. R. Evid. 201(b); <u>Universal Express, Inc. v. U.S. SEC</u>, 177 Fed. App'x 52, 53 (11th Cir. 2006) (unpublished) (explaining that a district court may take judicial notice of public records and may thus consider them on a motion to dismiss)). Likewise, this Court may also take judicial notice of official government records. <u>See</u> <u>Dimanche v. Brown</u>, 783 F.3d 1204, 1213 n.1 (11th Cir.

2015) (citing Fed. R. Evid. 201(b)(2); <u>Terrebonne v. Blackburn</u>, 646 F.2d 997, 1000, n.4 (5th Cir. 1981)).[1]

## III.    RELEVANT FACTS

Commenced near the end of World War II and launched in 1952, the SS United States was designed and constructed to be a multi-purpose ocean liner. (Doc. 12, ¶ 21). The vessel conducted hundreds of transatlantic crossings before her retirement from active use in 1969. (<u>Id.</u>). Through the ensuing decades, multiple changes in ownership occurred, including the acquisition by The SS United States Conservancy (the "Conservancy") in 2011. (<u>Id.</u>, ¶¶ , 25). Before the Conservancy's purchase, the vessel had been berthed along the north side of Philadelphia's Pier 82 since the 1990s. (Doc. 12-3, p. 2 of 14). After its 2011 acquisition, the Conservancy worked with developers to either refurbish the ship or otherwise develop it into a hotel, condominiums, or a multi-purpose venue. (<u>Id.</u>, p. 4 of 14). Such plans never came to fruition, and in 2024, the Conservancy and its vessel faced imminent eviction from Pier 82. (<u>Id.</u>, p. 13 of 14). Then, the County stepped in.

---

[1] <u>See</u> Defendant's Request for Judicial Notice (Doc. 15) requesting judicial notice of public records and government documents of Okaloosa County, including three (3) permits issued by the United States Army Corps of Engineers, to Okaloosa County, allowing for the sinking of vessels in the Gulf of Mexico to create artificial reefs.

In August 2024, the County bought the vessel from the Conservancy pursuant to a Purchase and Sale Agreement. (Doc. 12, ¶ 39; Doc. 12-4). Plaintiff was neither a party to, nor beneficiary of, that agreement between the County and the Conservancy. (See Doc. 12-4). The County purchased the vessel with the plan to sink the ship off the Florida coast and create the world's largest artificial reef. (Doc. 12, ¶¶ 10, 27).

Following the County's purchase, Plaintiff incorporated itself, under the laws of the State of New York, for the purpose of preventing the sinking or destruction of the SS United States. (Id., ¶ 1). Stated differently, Plaintiff's sole purpose is to interfere with the County's lawful use of its tangible property. Notwithstanding, Plaintiff does not plead any facts demonstrating that it or any of its members have any direct interest in and/or have any direct connection to the SS United States, apart from its members' generalized interest in the historic significance of the ship.

After purchasing the ship, the County transported the vessel from Philadelphia to a shipyard in Alabama where remediation work would commence to prepare the ship for sinking, including removal of its twin smokestacks and other parts of the ship's superstructure. (Id., ¶¶ 10–11). While transport was underway, on February 10, 2025, Plaintiff wrote to the United States Government and requested the Government to take "executive action by ordering the taking of [the SS United

States] for public use." (Doc. 12-1). At present, Plaintiff has no knowledge "whether the Executive Branch of the United States is even aware of the Open Letter, let alone whether it is being considered." (Doc. 12, ¶ 9). Nevertheless, Plaintiff continues to maintain this action.

Plaintiff does not ask this Court to order the County to cease all work on the ship or even to stop the County from sinking the ship. Instead, in Count I, Plaintiff seeks "equitable relief" and asks the Court to order the County to delay any structural and irreparable alterations in order "to provide the Executive Branch of the United States reasonable time to decide whether to take [the vessel] for public use. (Id., ¶ 47(a)). Plaintiff posits such "reasonable time" would entail 90 days, but Plaintiff requests that this 90-day period begin upon the Executive Branch's "proper receipt and commencement of review" of Plaintiff's February 10th letter. (Id., ¶¶ 49–50). Recognizing the tenuousness of this position, Plaintiff avers that "[w]ere the Executive Branch to communicate to this Honorable Court or to Plaintiff its intention *not* to take [vessel] for public use, Plaintiff would consent to the dismissal of [Count 1]. (Id., ¶ 48).

In Count II of its Amended Complaint, Plaintiff asks this Court to compel the County "to *seek* a permit under the MPRSA or Ocean Dumping Act before removal of the stacks and superstructure . . . ." (Id., ¶ 63) (emphasis added). Plaintiff contends

10

that making structural changes in preparation to reef the vessel amounts to an "end run" around the provisions of the Ocean Dumping Act and the National Historic Preservation Act of 1966. (Id., ¶ 47(b)). In support of its contention, Plaintiff cites The Tulane Hullabaloo, a student-run newspaper of Tulane University. (Id., ¶ 6, n.2).

## IV.   ARGUMENT

### A.   This Court Lacks Subject Matter Jurisdiction because Plaintiff Lacks Standing to Bring its Present Challenges

Plaintiff lacks standing to maintain its action against the County as to both Count I and Count II. As noted above, one of the three requirements Plaintiff must show to establish standing is a demonstrable injury in fact. Plaintiff's Amended Complaint fails to demonstrate Plaintiff has suffered such an injury, and thus, Plaintiff has not satisfied its burden to demonstrate standing. To establish an injury in fact, Plaintiff "must show that [it] suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, Inc. v. Robins, 578 U.S. 330, 339 (2016) (quoting Lujan, U.S. 504 at 560). Although they are related concepts, concreteness and particularity are different, and Plaintiff, nonetheless, must demonstrate both. Gardner, 962 F.3d at 1341.

An organization may have standing to sue on its own behalf for injuries it has sustained. Havens Realty Corp. v. Coleman, 455 U.S. 363, 379, n.19 (1982). Alternatively, an organization must show standing through the standing of its members, which requires the plaintiff to identify its members and allege how those members have been harmed. See Summers v. Earth Island Inst., 555 U.S. 488, 499 (2009) ("identify members who have suffered the requisite harm"). Plaintiff's Amended Complaint does neither.

### i.    Concreteness

As this Court has explained, for an injury to be concrete, it must be "'de facto' and 'real,' not merely 'abstract.'" Ladies Mem'l Ass'n v. City of Pensacola, No. 3:20cv5681-MCR-EMT, 2020 U.S. Dist. LEXIS 160071, at *7, 2020 WL 5237742 (N.D. Fla. Sep. 2, 2020) (referencing Gardner, 962 F.3d at 1341). "Moreover, purely psychic injuries arising from disagreement with government action do not meet the concreteness requirement." Id. (quotation and citations omitted).

In this case, Plaintiff disagrees with and objects to the County's actions in preparing its ship to be reefed. Plaintiff takes issue with the County's plans based upon the vessel's historical relevance to the Plaintiff's individual members, who would rather "preserve the vessel afloat, restore her, and make her a welcome site

for the public to visit." (Doc. 12-1) (cleaned up). Plaintiff further considers its efforts to preserve the SS United States as "not just a matter of preserving a historic vessel [but] about honoring the legacy of American Greatness and of the many who traveled on the vessel." (Id.). However, this vague and abstract difference in opinion between Plaintiff and the County about the best use of the County's property does not give rise to a concrete injury suffered by Plaintiff.

In Gardner v. Mutz, the United States Court of Appeals for the Eleventh Circuit considered a similar case in which several individuals and organizations filed suit and objected to the removal of a Confederate monument by a municipality. Gardner, 962 F.3d at 1333. Those plaintiffs claimed that the removal of the monument infringed on their interests in preserving Southern history, vindicating the cause for which Confederate veterans fought, and protecting memorials to American Veterans. Id. at 1341. In affirming dismissal, the Eleventh Circuit determined that the plaintiffs' claimed injuries were "pretty amorphous" and "simply too abstract" to establish a concrete injury in fact.[2] Id. The appellate court further

---

[2] The appellate court affirmed the trial court's without-prejudice dismissal of one claim. As to the other claim, the appellate court vacated the trial court's with-prejudice dismissal and instructed the trial court to dismiss that claim without prejudice.

explained that merely disagreeing with the removal of the monument "does not alone give rise to a concrete injury for Article III purposes." Id.

Like the plaintiffs' claimed injuries in Gardner, which the Eleventh Circuit considered too abstract and amorphous, so too are Plaintiff's claimed injuries in this case. Plaintiff's simple disagreement with the County's decision to create an artificial reef, despite the vessel's historical relevance, does not amount to any concrete injury to the Plaintiff. See Gardner, 962 F.3d at 1341("[W]hile a concrete injury needn't necessarily be 'tangible,' the Court has consistently held that purely psychic injuries arising from disagreement with government action—for instance, 'conscientious objection' or 'fear'—don't qualify.") (internal citations omitted).

## ii.    Particularity

As to particularity, Plaintiff's purported injury must be distinct—rather than undifferentiated—to it, and Plaintiff must demonstrate it has "been directly affected apart from [its] special interest in the subject at issue." Gardner, 962 F.3d at 1342. (internal quotation omitted). The "test requires more than an injury to a cognizable interest;" it "requires that the party seeking review be [itself] among the injured." Lujan, 504 U.S. at 563. An injury is not particularized when the plaintiff is asking the court to "decide questions of broad social import that are shared by other citizens

in equal measure." Garcia-Bengochea v. Carnival Corp., 57 F.4th 916, 923 (11th Cir. 2023) (internal citation omitted).

Looking again at Gardner, in addition to determining the plaintiffs who objected to the memorial's removal failed to set forth any concrete injury, the Eleventh Circuit also determined that the plaintiffs failed to allege any particularized injury. Gardner, 962 F.3d at 1341–42. The plaintiffs' "special interest in the subjects of Confederate history, veterans memorials, and the so-called 'Southern perspective'" did not amount to a particularized injury. Id. at 1342 (quotation omitted). "[G]eneralized desires to promote Southern history and to honor Confederate soldiers" did not distinguish the plaintiffs from other interested observers, and thus did not give rise to a particularized injury to confer standing. Id. at 1342–43.

Much like the Gardner plaintiffs' general interest in preserving Southern history, Plaintiff's general interest in preserving the SS United States and its history does not give rise to a particularized injury to invoke standing. Nor does Plaintiff's desire to "honor[] the legacy of American Greatness and of the many who traveled on the vessel." (Doc. 12-1). With its generalized interests in preservation and commemoration being undifferentiated from those of any other interested observers, Plaintiff is merely a "concerned bystander[] attempting to vindicate [its] value

15

interests." <u>Gardner</u>, 962 F.3d at 1343. With nothing more, Plaintiff has not demonstrated a particularized injury, which is a required showing to establish standing.

### iii.    Organizational Injury

Plaintiff brings its action on its own behalf because "the sinking or other destruction of the [vessel] would irrevocably and permanently terminate the very reason for the [Plaintiff's] existence." (Doc. 12, ¶ 15). More specifically, the "primary purpose of [the suit is to] prevent the historic ocean liner . . . from being sunk, dismembered, or destroyed." (<u>Id.</u>, ¶ 1). That is the extent of Plaintiff's perceived injury, and that is insufficient to establish an organizational injury-in-fact.

"[A]n organization's abstract concern with a subject that could be affected by an adjudication does not substitute for the concrete injury required by [Article] III." <u>Simon v. E. Ky. Welfare Rights Org.</u>, 426 U.S. 26, 40 (1976). An organizational plaintiff must show "far more than simply a setback to the organization's abstract social interests." <u>FDA v. All. for Hippocratic Med.</u>, 602 U.S. 367, 394 (2024) (citing <u>Havens</u>, 455 U.S. at 379).

Here, Plaintiff attempts to allege standing by positing an existential crisis, in the event the County utilizes its tangible property in a manner with which Plaintiff disagrees. But hyperbole and hypotheticals do not suffice to establish standing, for

16

"[l]ike an individual, an organization may not establish standing simply based on the intensity of the litigant's interest or because of strong opposition to the government's conduct, no matter how longstanding the interest and no matter how qualified the organization." Hippocratic Med., 602 U.S. at 394 (internal quotations and citations omitted). Plaintiff's Amended Complaint fails to establish Plaintiff's standing because Plaintiff fails to allege that it has or will suffer a cognizable injury-in-fact.[3]

### iv.    Associational Standing

Plaintiff's Amended Complaint also attempts, and fails, to demonstrate associational standing. When an association sues on behalf of its members, the association need not show that it has suffered an injury-in-fact. See Warth v. Seldin, 422 U.S. 490, 511 (1975). Instead, the association may demonstrate representational associational standing by showing (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted, nor the relief requested, requires the participation of individual members in the lawsuit. See Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 343 (1977); see also Warth, 422 U.S. at 511.

---

[3] Plaintiff does not, for example, attempt to suggest any resource diversion based upon the County's actions.

In support of its associational standing, Plaintiff avers that "[s]ome or all of the Coalition's members . . . would otherwise have standing to sue in their own right," and Plaintiff further contends that even though "the interests of the three directors each arise out of separate and distinct bases [they] combine synergistically within the framework of the organization (i.e., the sum is greater than its parts combined)." (Doc. 12, ¶ 20). Though all of Plaintiff's directors possess backgrounds in the realm of historical and cultural preservation, none has standing to sue in his own right because none has suffered or will suffer any particularized or concrete injury if the County is permitted to continue its vessel remediation efforts.

Plaintiff summarily claims director James S. Kaplan has a personal stake in the fate of the SS United States that differs from that of the general public. (Doc. 12, ¶ 16). Though Mr. Kaplan's background and accomplishments are commendable, neither relates directly or indirectly to the SS United States. And any "personal stake in the fate of the SS United States," as set forth in the Amended Complaint, is too general and vague to confer standing. Mr. Kaplan's generalized interest in preserving the SS United States fares no better than those plaintiffs in <u>Gardner</u>, who alleged a "special interest in the subjects of Confederate history, veterans memorials, and the so-called 'Southern perspective,'" and which the Eleventh Circuit Court of

18

Appeals found to be "too vague, inchoate, and undifferentiated" to establish standing. Gardner, 962 F.3d at 1343.

As for another director, John Quadrozzi, Plaintiff asserts "his personal, long-term pecuniary, and public-benefit interests would be irreparably harmed were [the vessel] to be sunk [or] otherwise rendered incapable of being preserved afloat." (Doc. 12, ¶ 18). Mr. Quadrozzi's alleged interests are no more concrete or particularized—and, indeed, are vaguer—than those of Mr. Kaplan. Mr. Quadrozzi's willingness to provide berthing space at a terminal in New York, of which he is the "beneficial owner," provides no basis for any claimed concrete or particularized injury. Assertions that Mr. Quadrozzi's personal, long-term pecuniary, and public-benefit interests would be harmed amount to mere conjecture or hypothetical injury, which cannot confer standing. See Los Angeles v. Lyons, 461 U.S. 95, 101–02 (1983) ("Abstract injury is not enough. The plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical.") (quotation omitted); see also Lujan, 504 U.S. at 561 (holding a required element of standing is that "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision") (quotation omitted).

Lastly, as to director Dan McSweeney, Plaintiff states "[Mr. McSweeney's] father was a crew member of SSUS. Because of his sustained and documented efforts relating to preservation of SSUS afloat [*sic*], and his personal relationship to the Ship, Mr. McSweeney's personal stake in the fate of SSUS differs from that of members of the general public." (Doc. 12, ¶ 17). The County is not unsympathetic to the fact Mr. McSweeney's father worked on the SS United States, and that his familial connection likely elicits stronger feelings about preserving the vessel. But Plaintiff, nonetheless, fails to adduce any facts showing Mr. McSweeney has or will suffer any concrete and particularized injury that is different from any public sentiment in saving the SS United States. See Edgerton v. City of St. Augustine, No. 3:20-cv-941-BJD-PDB, 2023 U.S. Dist. LEXIS 49055, at *100, n.13, 2023 WL 4687563 (M.D. Fla. Jan. 31, 2023) ("[Familial ties] affect only the magnitude of the plaintiffs' indignation, not the nature of their injury.") (citing McMahon v. Fenves, 946 F.3d 266, 271–72 (5th Cir. 2020)).

While the County acknowledges that Plaintiff's individual members may harbor emotional attachment to the vessel, neither those affections nor the members' opinions of the County's planned use of the vessel amount to any legitimate demonstration that its members would otherwise have standing to sue in their own

20

right. Consequently, Plaintiff's Amended Complaint fails to establish associational standing.

### v.   Ladies Memorial Association v. City of Pensacola

Illustrative on the issue of injury in fact is the Eleventh Circuit's opinion in Ladies Memorial Association, Inc. v. City of Pensacola, 34 F.4th 988 (11th Cir. 2022), which upheld this Court's finding that plaintiffs lacked standing because they failed to demonstrate an injury in fact. This Court's Order on the City's Motion to Dismiss recited the allegations as follows: in 1887, the City of Pensacola adopted an ordinance that renamed a public park after Confederate General Robert E. Lee. Ladies Mem'l Ass'n, 2020 U.S. Dist. LEXIS 160071 at *2–*3 (N.D. Fla. Sep. 2, 2020). The City also approved the construction of a 50-foot tall cenotaph monument to honor several historic figures, including the president of the Confederacy. Id. at *3. In 2020, the City decided to revert the park's moniker to its original name and remove the Confederate monument. Id. A group of plaintiffs, which included organizations and individuals with an interest in preserving the monument, filed an action for declaratory and injunctive relief, which was later removed to this Court. Id. at *4–*5. This Court granted the City's motion to dismiss for lack of standing and failure to state a claim. Id. at *1.

The Eleventh Circuit upheld this Court's finding that the plaintiffs lacked standing because plaintiffs failed to establish any injury in fact. "Most of the plaintiffs' allegations of harm go only to the general disagreement with taking down the cenotaph and a general notion that such action by the government would violate their constitutional rights, both of which did not invoke standing." Ladies Mem'l Ass'n, 34 F.4th at 993. Moreover, the plaintiffs' contention that removal of the monument would hurt the preservation of Florida history was not concrete enough to establish standing. Id. "[T]he plaintiffs ultimately being sad about the cenotaph being taken down does not give rise to standing." Id.

Here, Plaintiff's generalized interest in preserving the history of the SS United States, as well as honoring its greatness and its travelers, is similar, if not almost identical, to the plaintiffs' generalized interests in Gardner and Ladies Memorial Association. This Court should apply the same analysis, reach the same conclusion, and similarly find that Plaintiff lacks standing because it has failed to establish any injury in fact. "An interest unrelated to injury in fact is insufficient to give a plaintiff standing. Thus, a plaintiff without an injury in fact lacks Article III standing, and the federal courts do not have jurisdiction over his or her complaint." Stalley, 524 F.3d

22

at 1232 (internal quotation and citation omitted). Accordingly, Plaintiff's Amended

Complaint should be dismissed in its entirety.[4]

### B.    Plaintiff's Amended Complaint Fails to State a Claim for Which Relief May be Granted

### i.    First Cause of Action (Count I)

Even if this Court determines Plaintiff's Amended Complaint sufficiently

establishes standing to invoke this Court's subject matter jurisdiction, Plaintiff's

Amended Complaint still fails to state any cause of action entitling it to "a relatively

short and eminently reasonable delay" to provide the Executive Branch and

appropriate agencies to consider whether to take the vessel for public use. (Doc. 12,

¶¶ 13, 47(a)). Though Plaintiff makes clear the relief it desires, Plaintiff's Amended

Complaint fails to state any cognizable cause of action for which such—or any—

relief may be granted.

---

[4] In addition to dismissal on Constitutional standing grounds, Plaintiff's Amended Complaint warrants dismissal on prudential standing grounds. See Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 11–12 (2004) ("[P]rudential standing embodies judicially self-imposed limits on the exercise of federal jurisdiction . . . [and] encompasses the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." (internal quotations and citations omitted).

It is elementary that a complaint must give fair notice of a cause of action by providing a short and plain statement of the claim showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2). Though a plaintiff is not required to provide detailed factual allegations, a statement of claim must include plausible factual allegations demonstrating all elements of the claim. Iqbal, 556 U.S. at 678. A plaintiff provides fair notice by including allegations that outline all elements of the claim. See id. (a pleading must provide more than an accusation that "defendant unlawfully harmed me."). The factual allegations supporting each element of a claim must be sufficient to make the claim plausible. Id. at 678–79. A claim is plausible on its face when the complaint contains factual content so as to allow the court to reasonably infer that the defendant is liable for the alleged misconduct. Id. at 678.

Woefully absent from Plaintiff's Amended Complaint are any allegations demonstrating any claim for which it is entitled to any relief under Count I. Plaintiff does allege that the County breached any agreement involving or concerning Plaintiff for which Plaintiff would be entitled to any relief. Plaintiff's Amended Complaint asserts no more than the generic "I will be harmed" if the County is permitted to lawfully use its property as the County wishes. That is simply insufficient to state a claim. See Iqbal, 556 U.S. at 678. This Court may not even

arrive at Plaintiff's unprecedented request for relief because Plaintiff's Amended Complaint does not establish that it is entitled to any relief.

Plaintiff's Amended Complaint references two Public Laws, 92-296 and 94-536, which purportedly evidence the Federal Government's "broad interest…in retaining [the vessel] afloat and intact well into the future." (Doc. 12, ¶¶ 43–45; Doc. 12-5). Even if true, neither regulation creates a private right of action as to their provisions. Moreover, even if Plaintiff were to allege the County has acted in contravention of those Public Laws, any remedy for such a violation would be afforded to the Federal Government, not Plaintiff. To the extent Plaintiff's Amended Complaint may be read to rely upon the cited Public Laws as a basis for its claim(s), such reliance is misplaced. Plaintiff has not pled, and cannot plead, any claim or cause of action so as to support its request for unusual relief.

Nevertheless, Plaintiff's request for delay is most analogous to a request for injunctive relief. However, Plaintiff fails to establish any legal basis authorizing this Court to exercise its equitable authority. Instead, Plaintiff expressly concedes— and the County agrees—its request is unprecedented. (See Doc. 12, ¶ 51). Plaintiff's stated goal in this litigation is only to allow the United States Government an opportunity to consider exercising eminent domain over the County's property. Plaintiff's Amended Complaint, however, points to no legal authority authorizing

25

this Court to take such action to "buy time" strictly for the purpose of allowing a non-party to consider whether it should take any action. Because Plaintiff's Amended Complaint fails to state a cause of action as to Count I, dismissal is warranted.

### ii.    Second Cause of Action (Count II)

Plaintiff asks this Court to compel the County to "seek a permit under the MPRSA or Ocean Dumping Act before removal of the stacks and superstructure . . . ." (Doc. 12, ¶ 63). For purposes of the MPRSA, "dumping" means "a disposition of material. . . ." 33 U.S.C. § 1402(f). However, an exemption applies when disposition is "for a purpose other than disposal, when such construction or such placement is otherwise regulated by Federal or State law or occurs pursuant to an authorized Federal or State program." Id. Because the County does not intend to sink the vessel as a means of disposal, and because Federal law regulates the sinking of the ship to create an artificial reef, the County's activities fall squarely within this exemption from the MPRSA.

In this present case, Plaintiff avers the ship will be sunk for purpose of creating an artificial reef. (Doc. 12, ¶¶ 6, 10, 27, 41). When sinking a vessel for the creation of an artificial reef, permitting authority is delegated to the United States Army Corps of Engineers. 33 C.F.R. § 322.5 ("The Secretary of the Army has delegated

to the Chief of Engineers the authority to issue or deny section 10 permits.");[5]

see also Lozman v. City of Riviera Beach, 119 F.4th 913, 916 (11th Cir. 2024) ("The

Rivers and Harbors Appropriation Act of 1899 prohibits the excavation, filling, or

modification of the channel of any 'navigable water' of the United States without

the permission of the [United States Army] Corps [of Engineers].") (citing 33 U.S.C.

§ 403).[6] When issuing or denying a permit, the Army Corps of Engineers considers

the siting, constructing, monitoring, operating, maintaining, and managing of the

proposed artificial reef. 33 C.F.R. § 322.5(b).

Even if this Court were to consider that a permit issued by the Army Corps of

Engineers is a permit pursuant to the MPRSA, Count II of Plaintiff's Amended

Complaint still warrants dismissal because of mootness. As evidenced by the

documents within the County's contemporaneously filed Request for Judicial Notice

(Docs. 15, 15-1, 15-2, 15-3), the County has applied for, and the Army Corps of

Engineers has issued, permits authorizing the County to create artificial reefs by

sinking vessels, including the SS United States. (See Doc. 15-2, pp. 1–2 of 7 ("The

---

[5] "Section 10" refers to the Rivers and Harbors Appropriations Act of 1899 (*i.e.*, 33 U.S.C. § 403). 33 C.F.R. § 322.1.

[6] Plaintiff claims subject matter jurisdiction in based on "this action at its commencement concerned the fate of a vessel in navigation *upon navigable waters* of the United States." (Doc. 12, ¶ 4) (emphasis added).

Permittee shall deploy only the following authorized reef materials. . . .Heavy gauge ferrous and aluminum alloy metal hulled vessels which equal or exceed 60 feet hull length prepared and deployed in accordance with all applicable U.S. Coast Guard, U.S. Environmental Protection Agency, Florida Fish and Wildlife Conservation Commission, or other applicable state or federal agency regulations or policies.")).[7]

Additionally, Plaintiff's Amended Complaint accuses the County of making an "end run" around the National Historic Preservation Act (the "NHPA"). Specifically, Plaintiff claims "Section 106 [of the NHPA][8] mandates that any action that would threaten the future of a federally funded historical object, such as the SSUS, be reviewed by the applicable federal agencies to determine what the best course would be to protect the historical object." (Doc. 12, ¶ 55). However, "the

---

[7] In the event Plaintiff's pleading could be read as a challenge to the issued Army Corps permit, Plaintiff has failed to demonstrate its standing for such a challenge. When, as in this case, a plaintiff's injury arises from the government's allegedly unlawful regulation of a third party, "much more is needed." Lujan, 504 U.S. at 562. The plaintiff must establish that choices will be made by both the regulator and the regulated party "in such [a] manner as to produce causation and permit redressability of injury." Id. Moreover, a plaintiff bringing suit under the Federal Administrative Procedure Act must demonstrate that its injury-in-fact "falls within the 'zone of interests' sought to be protected by the statutory provision whose violation forms the legal basis for his complaint." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 883 (1990).

[8] Now codified at 54 U.S.C. §§ 300101–307108.

NHPA is directed towards heads of federal agencies and departments, not toward state or municipal officers." Edgerton, 2023 U.S. Dist. LEXIS 49055, at *78 (M.D. Fla. Jan. 31, 2023) (internal citation and quotation omitted). Therefore, it has been consistently determined that non-federal agencies such as the County cannot be held liable for violations of this Act. See id. (collecting cases and explaining that "all courts agree that under the plain language of the NHPA, non-federal agencies are not liable for violations of the NHPA.").

What's more, the NHPA is a "purely procedural" statute, requiring a Federal agency to "take into account" the effect of any "undertaking" on historical sites. City of Oxford v. F.A.A., 428 F.3d 1346, 1356 (11th Cir. 2005). An "undertaking" is "a project, activity, or program funded in whole or in part under the direct or indirect jurisdiction of a Federal agency, including": "those carried out by or on behalf of the Federal agency"; "those carried out with Federal financial assistance"; "those requiring a Federal permit, license, or approval"; and "those subject to State or local regulation administered pursuant to a delegation or approval by a Federal agency." 54 U.S.C. §§ 300320, 306108.

Plaintiff argues that because the vessel was constructed with use of Federal funds (Doc. 12, ¶ 23), NHPA review must occur. But Plaintiff's contention ignores the plain language of the NHPA. An "undertaking" is a project or activity "funded

in whole or in part under the direct or indirect jurisdiction of a Federal agency."

While the vessel may have received Federal funding decades ago, Plaintiff's

Amended Complaint does not—and cannot—allege that the County's non-federal

project and activities is federally funded.

### C.    Plaintiff's Amended Complaint Should be Dismissed with Prejudice

Based on the above, Plaintiff's Amended Complaint should be dismissed with

prejudice. While leave to amend a complaint should be freely given (Fed. R. Civ.

P. 15(a)), the Court "need not, however, allow amendment (1) where there has been

undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by

amendments previously allowed; (2) where allowing amendment would cause undue

prejudice to the opposing party; or (3) where amendment would be futile." Bryant

v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001).

Plaintiff filed its Amended Complaint in response to the County's motion to

dismiss Plaintiff's initial pleading. In that motion, the County argued (as it does here)

that Plaintiff lacked standing and failed to state a cause of action for any claim. (See

Doc. 10). Even with the benefit of the County pointing out the deficiencies of

Plaintiff's claims, Plaintiff has failed to correct these deficiencies in its amended

pleading. Plaintiff's Amended Complaint again fails to articulate any justiciable

issues, even with the addition of Count II. This Court lacks subject matter

30

jurisdiction to adjudicate the present dispute because Plaintiff lacks standing to compel the County to delay its work. Even so, Plaintiff cannot state any cause of action for any claim so as to justify its requested relief. Consequently, any additional amendment would be futile, and Plaintiff's attempted claims should be dismissed with prejudice.

## V.    CONCLUSION

At its core, Plaintiff's Amended Complaint asks this Court to restrain the County's lawful use of its property unless and until another entity takes up Plaintiff's cause. Plaintiff's requests are unreasonable, unjustified, unauthorized, and unprecedented. There exists no basis in law or fact for such judicial interference with, or encroachment upon, the County's right to utilize its property for the benefit of its citizens. Nor is there any basis to compel the County to seek an inapplicable permit prior to utilizing its property. This Court should decline Plaintiff's invitation to create new law. Plaintiff's Amended Complaint should be dismissed with prejudice, and the County should be awarded its costs incurred in this action.

Respectfully submitted, this 7th day of May 2025.

*/s/ Elmer C. Ignacio*
ELMER C. IGNACIO
Florida Bar No. 537683
*/s/ Matthew R. Shaud*
MATTHEW R. SHAUD
Florida Bar No. 122252
Nabors, Giblin & Nickerson, P.A.
1500 Mahan Drive, Suite 200
Tallahassee, Florida 32308
(850) 224-4070
(850) 224-4073 (Facsimile)
eignacio@ngnlaw.com
mshaud@ngnlaw.com
legal-admin@ngnlaw.com

**COUNSEL FOR DEFENDANT,
OKALOOSA COUNTY, FLORIDA**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically filed with the U.S. District Court, Northern District of Florida, via the CM/ECF system, which will also serve a copy to all counsel of record, on this 7th day of May 2025.

*/s/ Elmer C. Ignacio*
**ATTORNEY**

## LOCAL RULE 7.1(F) CERTIFICATION

I HEREBY CERTIFY that this motion contains 6,814 words, excluding the case style and certifications.

*/s/ Elmer C. Ignacio*
**ATTORNEY**