UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION
IN ADMIRALTY

NEW YORK COALITION TO
SAVE THE STEAM SHIP
UNITED STATES, INC.

   Plaintiff,

vs.                                       Case No. 3:25-cv-00212-MCR-HTC

OKALOOSA COUNTY, FLORIDA

   Defendant.
_____/

**DEFENDANT'S REPLY MEMORANDUM
AND INCORPORATED MEMORANDUM OF LAW**

Defendant, OKALOOSA COUNTY, FLORIDA (the "County"), pursuant to Northern District of Florida Local Rule 7.1(I) and in accordance with this Court's June 17, 2025, Order allowing a Reply Memorandum in support of the County's Motion to Dismiss, (Doc. 25), hereby submits the following memorandum of law:

**I.    BACKGROUND**

The parties proceed under a two-count Amended Complaint (Doc. 12), in which Plaintiff asks this Court to prohibit the County from working on and using its tangible property (Count I), and to compel the County to apply for a permit under

the Marine Protection, Research, and Sanctuaries Act before undertaking specified work on the County's tangible property (Count II).

The County filed a Motion to Dismiss (Doc. 16), in which it argued that Plaintiff (1) fails to plead sufficient facts demonstrating it had the requisite standing to bring its claims under Counts I and II, and (2) fails to state a cause of action as to Counts I and II.

In its Memorandum of Law in Opposition to Defendant's Motion to Dismiss, (Docs. 22, 22-1, 23) ("Response"), Plaintiff raises new issues and assertions, relies upon matters beyond the Amended Complaint, vacillates between legal theories, and includes substantive and procedural deficiencies. This Reply Memorandum addresses those points in the order presented by Plaintiff.

## II.   JUSTICIABILITY

In its Response, Plaintiff presents unsupported arguments and amorphous theories regarding justiciability of its claims. Plaintiff pleads with this Court to assert admiralty jurisdiction because of a "unique and dire situation [] at hand that is crying out for the sort of equitable intervention that perhaps only a court sitting in admiralty *could* offer." (Doc. 22, p. 9) (emphasis in the original).

Plaintiff correctly asserts admiralty cases "are generally classified as arising either in tort or in contract." (Id., p. 8). See Hyundai Heavy Indus. Co. v. M/V Saibos FDS, 163 F. Supp. 2d 1307, 1310 (S.D. Ala. 2001) ("Admiralty jurisdiction may be

based on contract or tort."); see also 2 Am Jur 2d Admiralty § 45 ("The principal subjects of admiralty jurisdiction are maritime contracts and maritime torts.") (citation omitted). Aside from citing to the writings of Plaintiff's own counsel, Plaintiff provides no legal basis or precedent for applying admiralty jurisdiction to matters other than contract or tort or to matters similar to Plaintiff's claims. (See Doc. 22, p. 8, n.2).

Because Plaintiff's present claims involve neither a contract nor any tortious act, admiralty jurisdiction should not apply. And this Court surely should not invoke admiralty jurisdiction based on Plaintiff's perceived crisis,[1] based on Plaintiff's belief that federal courts are "free to fashion new rules and recognize new causes of action" (Doc. 22, p. 8), or to effectuate Plaintiff's dilatory purpose in bringing this action to "provide some small counterweight and gentle braking to an accelerated process of destruction . . . ," (id., p. 13).

Even if this Court were to exercise admiralty jurisdiction, dismissal is still warranted because Plaintiff cannot demonstrate any concrete and particularized injury in fact necessary to confer standing.

---

[1] Plaintiff unabashedly claims, "It was, after all, the federal judiciary that in large part created the crisis . . . ." (Doc. 22, pp. 14–15).

### III. STANDING

As an organization, Plaintiff's stated purpose is "preventing the historic ocean liner SS UNITED STATES . . . from being sunk, dismembered, or destroyed." (Doc. 12, p. 1). Plaintiff contends the County's planned actions pose an "imminent potential injury . . . [that] to Plaintiff (sinking, dismembering, or destruction of the ship) is both concrete and particularized." (Doc. 22, p. 16).

In support of its contention that it has suffered or will suffer a concrete injury, Plaintiff's Response quotes FEC v. Akins, 524 U.S. 11, 24 (1998) and argues, "where a harm is concrete, though widely shared, the Court has found injury in fact." (Doc. 22, pp. 17–18). The County agrees with that holding. But as this quoted excerpt indicates, to demonstrate standing, a litigant must still meet the concreteness requirement of an injury in fact, and Plaintiff has failed to plead sufficient facts or fashion any sound legal argument on this point other than claiming (without any legal support) that it has suffered a concrete injury.

Plaintiff also cites Havens Realty Corp. v. Coleman, 455 U.S. 363 (1982) for the proposition that "injury to, or frustration of, a primary organizational purpose can . . . be the basis for a cognizable injury in fact to an organization giving rise to organizational standing." (Doc. 22, p. 18). Plaintiff summarily concludes that in Havens the United States Supreme Court held that an organization had standing "because the defendant's practices injured [an organization's] ability to accomplish

4

its purpose." (Id., p. 18). Further analysis of Havens, however, demonstrates Plaintiff's overly broad and inaccurate interpretation of the holding of that case.

In Havens, the plaintiffs, including a non-profit corporation, filed a class action suit against an apartment complex owner and employee who were alleged to have engaged in racial steering in violation of the Fair Housing Act. Havens, 455 U.S. at 366–67. The non-profit's stated purpose was "to make equal opportunity in housing a reality." Id. at 368. Importantly, the non-profit also operated a housing counseling service. Id. As its claimed injury, the non-profit alleged "it [had] been frustrated by defendants' racial steering practices in its efforts to assist equal access to housing through counseling and other referral services." Id. at 379. This is similar to this present case in that Plaintiff's only claimed injury is that its specific purpose as an organization will be injured or frustrated if the County's planned actions regarding are not delayed. Unlike Plaintiff in this case, however, the non-profit in Havens further pled that it had "to devote significant resources to identify and counteract the defendant's [sic] racially discriminatory steering practices." Id. (alteration in the original).

The Supreme Court explained that the non-profit sufficiently alleged an injury in fact by claiming it had to expend considerable resources to counteract the defendants' discriminatory practices. Id. Such claimed injury was sufficiently concrete in nature as opposed to merely impairing the organization's interests. Id.

5

("Such concrete and demonstrable injury to the organization's activities—*with the consequent drain on the organization's resources*—constitutes far more than simply a setback to the organization's abstract social interest.") (emphasis added) (citing Sierra Club v. Morton, 405 U.S. 727, 739 (1972)).

In a case cited in the County's Motion to Dismiss, FDA v. Alliance for Hippocratic Medicine, the United States Supreme Court clarified its holding in Havens and cautioned about extending that holding beyond the context of that case. FDA v. All. For Hippocratic Med., 602 U.S. 367, 396 (2024) ("Havens was an unusual case, and this Court has been careful not to extend the Havens holding beyond its context."). Alliance for Hippocratic Medicine involved four pro-life medical associations who challenged the Food and Drug Administration's approval of a pregnancy termination drug, as well as lifting restrictions on the drug's use. Id. at 375–76. In short, the pro-life medical associations desired to increase the difficulty for physicians to prescribe, and for pregnant women to obtain, this medication. Id. at 374. The medical associations argued that under Havens, "standing exists when an organization diverts its resources in response to a defendant's actions." Id. at 395 (citing Havens). The Supreme Court summarily dismissed that argument, pointing out that "that theory would mean that all the organizations in America would have standing to challenge almost every federal policy that they dislike, provided they

6

spend a single dollar opposing those policies." Id. at 395. The same holds true here, where Plaintiff challenges a local government's planned initiatives.

Importantly, the Supreme Court found critical the fact that "[the "non-profit in Havens] not only was an issue-advocacy organization but also operated a housing counseling service." Id. Because the non-profit's core business activities were directly affected and interfered with, the Supreme Court determined that the non-profit had demonstrated a sufficient injury in fact giving rise to standing. This readily distinguishes Havens from the case before this Court, where Plaintiff has alleged and argued nothing more than a frustration of its purpose in its efforts to preserve the SS United States.

Plaintiff's Response also argues that the Eleventh Circuit Court of Appeal's holding in Gardner v. Mutz, 962 F.3d 1329 (11th Cir. 2020), is distinguishable both on the issue of concreteness and particularity. Gardner involved a lawsuit filed by individuals and organizations who opposed the City of Lakeland's decision to relocate a confederate monument. The Eleventh Circuit determined that the plaintiffs lacked standing to bring their claims.

As to issue of concreteness, the Eleventh Circuit has consistently held "purely psychic injuries arising from disagreement with government action—for instance, 'conscientious objection'—don't qualify." Id. at 1341 (cleaned up). The Gardner plaintiffs' alleged injury was that the decision to relocate the monument infringed

7

on their "interests in preserving the history of the south, expressing their free speech from a Southern perspective, vindicating the cause for which the Confederate Veteran fought, and protecting and preserving Memorials to American veterans." Id. at 1341 (cleaned up). The Eleventh Circuit found such alleged injury to be "pretty amorphous." Id.

Plaintiff argues, without any legal analysis or basis, that its claimed injury in this case is unlike the claimed injuries by these organizations in Gardner in that the harm Plaintiff faces is the permanent and irrevocable deprivation of its reason for existence (*i.e.*, preserving the SS United States). The United States Supreme Court's holdings in both Havens and Alliance for Hippocratic Medicine make clear, however, that mere frustration or impairment of an organization's abstract social interest is insufficient to establish standing.

As to particularity, the Eleventh Circuit in Gardner held that an injury "cannot be 'undifferentiated,' but rather must be 'distinct' to the plaintiff," and "a plaintiff must show that [it] has been directly affected apart from [its] special interest in the subject." Id. at 1342. The Eleventh Circuit also ruled that impairment to "generalized desires to promote Southern history and to honor Confederate soldiers" does not amount to any particularized injury in fact. Id. at 1343. In comparing the Gardner plaintiffs' alleged interest in Southern history and honoring Confederate soldiers to Plaintiff's interest in preserving a piece of maritime history, the *only* difference is

8

the historic subject matter to which the interests are directed. Plaintiff's only argument on the issue of particularity is that impairment or harm to Plaintiff's reason for existence (*i.e.*, the preservation of the SS United States) is sufficiently particularized and distinguishes it from the plaintiffs in Gardner. But again, the holdings in both Havens and Alliance for Hippocratic Medicine sink Plaintiff's argument on this issue.

In its Response, Plaintiff further contends the County's Motion to Dismiss "has attempted to downplay the significance" of the facts Plaintiff has alleged regarding its members/directors and that "many facts are disputed, especially as to Director Quadrozzi." (Doc 22, p. 21). Plaintiff further argues that it would be premature for this Court to rule on the issue of standing before any discovery. (Id.). Plaintiff's arguments on these point are meritless. Knowing full well that this Court must accept all factual allegations in the Amended Complaint as true when considering arguments for and against dismissal under Rule 12(b)(1) and (6), the County's Motion to Dismiss did not dispute any facts. Indeed, all of the County's dismissal arguments, including its argument that Plaintiff lacks representational associational standing, are premised on Plaintiff's factual allegations being true. Accordingly, no discovery is necessary for this Court to consider the issue of standing (or lack thereof). As argued in detail in the County's Motion to Dismiss, the facts alleged in the Amended Complaint regarding Plaintiff's members (taken as

true) fall short of and do not give rise to representational associational standing. (Doc. 16, pp. 17–21).

## IV. SECTION 106 OF THE NHPA

In both its Amended Complaint and its Response, Plaintiff impliedly suggests that the County's creation of an artificial reef is barred because the vessel is listed on the National Register of Historic Places. (See Doc. 12, at ¶¶ 6, 22, 58; n.2, n.7; Doc. 22, pp. 3, 24). Plaintiff's assertions are meritless. While the vessel may be listed on the National Register of Historic Places, its listing does not restrict the County's use of its property, and Plaintiff provides no legal authority to show otherwise. Indeed, private owners of property on the National Register may remodel, renovate, sell, or demolish their property without limitation. See 36 C.F.R. § 65.2(b) ("Listing of private property on the National Register does not prohibit under Federal law or regulations any actions which may otherwise be taken by the property owner with respect to the property."). Instead, the National Register is used as a planning tool to control the actions of Federal agencies—not private owners—in relation to properties on the Register. Id.; 36 C.F.R. § 65.2(c)(1). With respect to nationally designated private property (*e.g.*, the SS United States), the National Historic Preservation Act does not restrict the rights of private owners such as the County.

## V.   ERRORS AND OMISSIONS

The most egregious issue with Plaintiff's Response is Plaintiff's failure to address several key arguments the County raised in its Motion to Dismiss. Though Plaintiff's Response unconvincingly attempted to distinguish Gardner, Plaintiff did not address or even mention either this Court's ruling in Ladies Memorial Association, Inc. v. City of Pensacola, No. 3:20cv5681-MCR-EMT, 2020 U.S. Dist. LEXIS 160071, 2020 WL 5237742 (N.D. Fla. Sep. 2, 2020), or the Eleventh Circuit's decision in the same, 34 F.4th 988 (11th Cir. 2022), both of which are substantial cases in this circuit regarding standing and the particularity and concreteness requirements a litigant must meet.

Additionally, the County's Motion to Dismiss argues (with citations to legal authority) that the County cannot be held liable under the National Historic Preservation Act ("NHPA"). (Doc. 16, pp. 28–29). In its Response, Plaintiff side-steps this argument and posits that the issue of whether the NHPA confers a right of action against the County is "complex." (Doc. 22, p. 24). In support, Plaintiff merely cites to a law review article, but gives no further analysis. (Id., p. 25). Accordingly, because Plaintiff's Response fails to provide any counterargument or analysis, this Court should consider Plaintiff's omission as a concession of the issue. See Suarez v. Padron, No. 18-23930-CIV, 2019 U.S. Dist. LEXIS 14838, at *7 (S.D. Fla. Jan.

29, 2019) ("When a party fails to respond to its opponent's argument or otherwise address a claim, the Court may consider such argument or claim abandoned.")

Finally, when ruling on a facial challenge for dismissal under Rule 12(b)(1) and dismissal under Rule 12(b)(6), the Court's review generally is limited to the four corners of the complaint. Lawrence v. Dunbar, 919 F.2d 1525, 1528 (11th Cir. 1990); Johnson v. City of Atlanta, 107 F.4th 1292, 1298 (11th Cir. 2024). In its Response, Plaintiff cites and refers to several matters that Plaintiff did not incorporate or reference in its Amended Complaint, including: a purported excerpt from https://www.ssusc.org (Doc. 22-1); the contents of a "detailed summary" between the undersigned and Plaintiff's counsel (id., pp. 5–6); and an online article from www.al.com (id., p. 13, n.7). The Court should strike and should not consider these or any other matters and materials not included in Plaintiff's Amended Complaint.

## VI.   DISMISSAL WITH PREJUDICE

The County's Motion to Dismiss argues that dismissal with prejudice is appropriate because Plaintiff has not and cannot present facts that could establish standing. Plaintiff counters that because questions remain about whether the County complied with the NHPA, dismissal with prejudice is not appropriate. (Doc. 22, p. 25). Plaintiff further hypothesizes there is a possibility the Army Corps of Engineers should be joined as a necessary party and that the lack of discovery to date has prejudiced Plaintiff. (Id.). Even if true, these bases cannot salvage Plaintiff's

absence of showing any concrete and particularized injury in fact, and therefore, are not valid reasons to allow further amendment. There exists no present set of facts so as to allow Plaintiff to either establish standing or state any cognizable claim against the County. Accordingly, dismissal with prejudice is warranted.

## VII.   CONCLUSION

As set forth above and within the County's Motion to Dismiss, Plaintiff's Amended Complaint should be dismissed, as Plaintiff lacks standing to prosecute its claims against the County, and even so, Plaintiff has failed to state a cause of action for any cognizable claim.

Respectfully submitted, this 27th day of June, 2025.

/s/ *Elmer C. Ignacio*
ELMER C. IGNACIO
Florida Bar No. 537683
MATTHEW R. SHAUD
Florida Bar No. 122252
Nabors, Giblin & Nickerson, P.A.
1500 Mahan Drive, Suite 200
Tallahassee, Florida 32308
(850) 224-4070
(850) 224-4073 (Facsimile)
eignacio@ngnlaw.com
mshaud@ngnlaw.com
legal-admin@ngnlaw.com

**COUNSEL FOR DEFENDANT, OKALOOSA COUNTY, FLORIDA**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been electronically filed with the U.S. District Court, Northern District of Florida, via the CM/ECF system, which will also serve a copy to all counsel of record, on this 27th day of June 2025.

/s/ *Elmer C. Ignacio*
**ATTORNEY**

## LOCAL RULE 7.1(F) CERTIFICATION

**I HEREBY CERTIFY** that this motion contains 2,756 words, excluding the case style and certifications.

/s/ *Elmer C. Ignacio*
**ATTORNEY**