UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

NEW YORK COALITION TO SAVE
THE STEAM SHIP UNITED
STATES, INC.,

      Plaintiff,

v.                                                   Case No. 3:25cv212-MCR-HTC

OKALOOSA COUNTY, FLORIDA,

      Defendant.

_____/

<u>ORDER</u>

This matter is before the Court on Defendant Okaloosa County's (the "County") motion for sanctions under Federal Rule of Civil Procedure 11. Doc. 31. Upon consideration of the motion, Plaintiff's response (Doc. 32), and with the benefit of oral argument, the motion shall be DENIED.

## I.    BACKGROUND

This action arises out of the Plaintiff New York Coalition to Save The Steam Ship United States, Inc.'s (the "Coalition") attempt to stop (or at least delay) the County from turning the SS United States into an artificial reef. As set forth in more detail in the Court's Order dismissing this action (Doc. 28),[1] the Coalition was

---

[1] For a detailed recitation of the facts and history of the ship and how the County came to purchase it, see the Order of dismissal (Doc. 28).

formed in October 2024 for the singular purpose of stopping the County, which had purchased the ship two months earlier, from sinking it offshore near Destin, Florida. In February 2025, the Coalition reached out to the executive branch and asked the President to take the ship for public use and preserve it as a historic site. Less than a month later, after having not heard from the President, the Coalition filed the instant action. Doc. 1.

In its initial complaint, the Coalition described the Court's jurisdiction as arising under admiralty and because the "action concerns the interaction among the three branches of government." Doc. 1 at 2. The Coalition contended it had standing because: (1) it was formed for the express purpose of saving the ship; and (2) it had petitioned the executive branch to act. *Id.* at 4. As relief, the Coalition asked the Court to assume jurisdiction, serve the Attorney General (although the United States is not a party to the action), and award such further and other relief as the Court deemed appropriate. *Id.* at 11. Additionally, the Coalition stated that if the executive branch did not act on its request, the Coalition would consent to the dismissal of the action; the Coalition asked for 90 days to provide the executive branch an opportunity to decide what it wanted to do. *Id.* at 9-10.

In response, the County filed a motion to dismiss based on lack of standing and for failure to state a claim. Doc. 10. Regarding standing, the County argued the Coalition had not alleged that it suffered a concrete and particularized injury and

cited to the Eleventh Circuit's decisions in *Gardner v. Mutz*, 962 F.3d 1329 (11th Cir. 2020) and *Ladies Mem'l Ass'n v. City of Pensacola*, 34 F.4th 988 (11th Cir. 2022). In both cases, the plaintiffs were organizations opposing the removal or relocation of a confederate monument. And, in both cases, the Eleventh Circuit held the organizations lacked standing. Notably, *Ladies Mem'l* is a case originally decided by this Court.[2]

Rather than responding to the motion to dismiss, the Coalition filed an amended complaint. Doc. 12. The amended complaint contained many of the same facts set forth in the original complaint. Like the original complaint, the amended complaint sought time for the executive branch to act. Unlike the original complaint, however, the amended complaint also sought to have the Court order the County to seek a permit under the Marine Protection Research and Sanctuaries Act ("MPRSA") a/k/a the Ocean Dumping Act *and* added some additional facts regarding the members of the Coalition in an attempt to establish associational standing (in additional to organizational standing).[3]

---

[2] In *Ladies Mem'l*, this Court denied a motion to remand and then dismissed the action for lack of standing. *See Ladies Mem'l Assoc., Inc. v. City of Pensacola, Fla.*, 2020 WL 5237742 (N.D. Fla. Sept. 2, 2020) (dismissing action); *see also, Ladies Mem'l Assoc., Inc.* 2020 WL 8449155 (N.D. Fla. Aug. 25, 2020) (denying motion to remand). On appeal, the Eleventh Circuit agreed the plaintiff lacked standing but directed this Court to remand the case to state court for lack of jurisdiction. *Ladies Mem'l Assoc., Inc.*, 34 F.4th at 994.

[3] An organization may have standing to sue on its own behalf by showing it has sustained injuries. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 & n.19 (1982). It can also demonstrate standing based on injury to its individual members. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009).

Because the Coalition could amend its complaint as a matter of right, *see* Fed. R. Civ. P. 15(a), the Court denied as moot the County's motion to dismiss (Doc. 13). On May 7, the County filed a motion to dismiss the amended complaint, arguing, once again, that the Coalition did not have standing and, even if it did, it failed to state a claim.  Doc. 16.

On May 23, after moving to dismiss the amended complaint, the County served a Rule 11 safe harbor letter and a copy of a motion for sanctions on the Coalition, asking the Coalition to voluntarily dismiss their suit with prejudice.  *See* Doc. 31 at 33 (Certificate Regarding Safe Harbor Period); Doc. 32 at 2 (detailing the May 23 safe harbor letter); *see also* Fed. R. Civ. P. 11(c)(2) (before filing a motion for sanctions, it must be served on the offending party and the party must be given 21 days to withdraw the offensive pleading or document).  The Coalition did not respond to the safe harbor letter and did not dismiss the action.  Instead, after two extensions, the Coalition filed a memorandum in opposition to the County's motion to dismiss on June 11.  Doc. 22.  However, rather than file the motion for sanctions at the expiration of the 21-day safe harbor, the County filed a reply (Doc. 26) to the Coalition's response.

On August 6, the Court entered an order granting the County's motion to dismiss and dismissed the case without prejudice, finding that the Coalition could not establish Article III standing and therefore the Court did not have subject matter

jurisdiction over the case. Doc. 28 at 12. The Court found that none of the Coalition's arguments for standing "hold water," that neither the Coalition nor its directors "identified any injury to a legally protected interest," and that the Coalition cannot "manufacture[]" an injury to create standing. *Id.* at 8. The Court also noted the amended complaint suffered "from a redressability issue" because it "seeks only to buy time to convince *others* to act." *Id.* at 11.

Twelve days later, and in response to a communication from the County regarding the motion for sanctions, the Coalition filed a notice of voluntary dismissal *with* prejudice. Doc. 30. The next day—88 days after sending the initial Rule 11 safe harbor letter to the Coalition—the County filed its motion for sanctions. Doc. 31. The County seeks attorneys' fees and costs against James Maloney, counsel for the Coalition, for filing this action.

## II.  LEGAL STANDARD

"Rule 11 imposes an affirmative duty on an attorney to conduct a reasonable inquiry into both the facts and the law before filing a pleading or motion."[4] *Gulisano v. Burlington, Inc.*, 34 F.4th 935, 942 (11th Cir. 2022) (citing *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551 (1991)). A lawyer who fails to do so may be subject to sanctions. *Mike Ousley Prods., Inc. v. WJBF-TV*, 952

---

[4] Although Rule 11 sanctions may also be imposed on a client, "Rule 11 does not permit sanctioning a client … when the basis for the sanction is that the pleading was legally frivolous." *Byrne v. Nezhat*, 261 F.3d 1075, 1118 (11th Cir. 2001).

F.2d 380, 382 (11th Cir. 1992) (Under Rule 11, "[t]he signature of an attorney constitutes a certificate by the signer that" a filing, "to the best of the signer's knowledge, information, and belief formed after reasonable inquiry, … is well grounded in fact."). Rule 11 sanctions are intended "to discourage dilatory or abusive tactics and help to streamline the litigation process by lessening frivolous claims or defenses." *Didie v. Howe*, 988 F.2d 1097, 1104 (11th Cir. 1993) (internal quotations omitted). Thus, sanctions may be appropriate: (1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose. *Anderson v. Smithfield Foods, Inc.*, 353 F.3d 912, 915 (11th Cir. 2003).

When deciding whether to impose sanctions under Rule 11, a district court must conduct a two-step inquiry, determining "(1) whether the party's claims are objectively frivolous; and (2) whether the person who signed the pleadings should have been aware that they were frivolous." *Gulisano*, 34 F.4th at 942 (citing *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998)). A factual claim is frivolous when it has no reasonable factual basis. *See id.* A legal claim is frivolous when it has no reasonable chance of succeeding. *See id.* In other words, a pleading is objectively frivolous if no competent attorney would have concluded it had a reasonable chance

of success or involved a reasonable argument to change the law. *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996). The court can impose sanctions for violations of Rule 11, even if the claims were brought in good faith, so long as the attorney failed to conduct a reasonable inquiry into the matter. *Amlong & Amlong, P.A. v. Denny's, Inc.,* 500 F.3d 1230, 1268 (11th Cir. 2006).

## III. DISCUSSION

The County argues the Coalition's Amended Complaint is objectively frivolous because: (1) the Coalition should have known it could not establish standing; (2) Count I had no reasonable chance of success because the Coalition could not cite an existing cause of action or "cognizable legal theory" in support of it; and (3) on Count II, the Coalition's counsel was "deliberately indifferent to obvious facts when he filed Plaintiff's Amended Complaint Raising Count II." *See* Doc. 31 at 24 (internal quotations and citation omitted). The County asserts that the Coalition's counsel failed to make "an inquiry reasonable under the circumstances" before filing (*id.* at 31) and that as to the Coalition's argument under the National Historic Preservation Act ("NHPA"), "[a]ny competent attorney conducting a pre-filing investigation would (or should) have determined that the County could not be liable for violations of the NHPA, for the County is not a Federal agency." *Id.* at 25.

The County further argues the Coalition's Amended Complaint was filed in bad faith for improper purpose because the lawsuit's only purpose was to "delay and

prohibit the County from using its property" and the Coalition concedes its request was "unprecedented." Doc. 31 at 28. The County argues, "Plaintiff's persistent bad faith and dilatory tactics are wholly improper and a gross abuse of this Court's finite resources." *Id.* at 30.

In its written response, the Coalition takes issue with the timing of the motion, contending that it assumed the motion was off the table when the County did not file it after the expiration of the 21-day safe harbor and, instead, asked the Coalition to consent to allowing the County to file a reply to the Coalition's response to the motion to dismiss. Doc. 32 at 2. The Coalition also argues the motion is moot because once it was contacted by the County prior to the filing of the motion in August, the Coalition filed a notice of voluntary dismissal with prejudice under Rule 41, giving the County exactly what it was asking for.

Additionally, the Coalition argues the action was not frivolous because the concept of Article III standing "has not been defined with complete consistency in all of the various cases … [and] the concept cannot be reduced to a one-sentence or one-paragraph definition." *Valley Forge Christian Coll. v. Americans United*, 454 U.S. 464, 475 (1982); *see* Doc. 32 at 3. Indeed, at the hearing, the Coalition's counsel argued that despite the *Gardner* and *Ladies Mem'l* decisions, the Supreme Court has been much more lenient when it comes to standing. The Coalition's counsel conceded at the January 7 hearing that he knew "from the beginning" that

there may be issues with the Coalition's standing. He nonetheless asserted that the Coalition's standing argument was not frivolous because "reasonable minds can differ" as to standing, which is an "amorphous" concept. Additionally, the Coalition "put a great deal of effort" into amending its complaint to present a nonfrivolous standing argument after the first motion to dismiss was filed.

Finally, the Coalition argued there was "no bad faith nor an improper purpose" to the litigation and the Coalition's purpose "was not to harm the County in any way, it was to save this vessel that is an icon of American history from being sunk." Counsel noted that were he to be sanctioned under Rule 11, he doesn't "think he would ever take a chance again and try to do the right thing and save a ship … that's something special. This is a sui generis case."

While the Court agrees with the County that the Eleventh Circuit's and this Court's decisions in *Gardner* and *Ladies Mem'l* should have given the Coalition great pause in bringing this action, the Court does not think sanctions, beyond dismissal, are warranted in this case. *See Ocampo v. Carrington Mortg. Servs., LLC*, 288 F. Supp. 3d 1327, 1331-32 (S.D. Fla. 2017) (denying Rule 11 motion for sanctions even though plaintiff or his counsel "knew or should have known that [p]laintiff had no standing").

First, although the Supreme Court's decision in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) set forth the elements necessary to establish standing, the

courts' application of *Lujan* has varied. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (explaining that to establish standing, plaintiffs must show (1) that they have suffered an injury-in-fact that is (2) traceable to Defendants and that (3) can likely be redressed by a favorable ruling.). Specifically, courts (and judges or justices on the same court) differ in their analysis of whether a particular plaintiff has suffered a concrete and particularized injury as necessary to constitute an "injury-in-fact" under *Lujan*. *See* ERWIN CHEMERINSKY, CONSTITUTIONAL LAW: PRINCIPLES AND POLICIES (7th ed. 2024) (stating that the definition of "concrete" set out by the Supreme Court in *Spokeo v. Robins*, 578 U.S. 330 (2016) "gives little guidance to lower courts" and when an injury is sufficiently "concrete" and "particularized" to establish standing is "unclear").

For example, in *Glynn Env't Coal., Inc., v. Sea Island Acquisition, LLC*, 26 F.4th 1235, 1241 (11th Cir. 2022), the Eleventh Circuit disagreed with the district court and determined that an environmentalist who regularly visited wetlands to recreate and enjoy their natural beauty—and derived less pleasure from unnatural grasses and lawn placed on wetland—had standing. *See also, Clapper v. Amnesty Int'l, USA*, 568 U.S. 398 (2013) (in a 5-4 opinion, the Court found plaintiffs lacked standing and reversed the Second Circuit's reversal of the district court's entry of summary judgment); *Bost v. Ill. State Bd. of Elections*, 2026 WL 96707, at *5, 607 U.S. — (2026) (the Supreme Court disagreed with the lower appellate and district

court's determination that candidates did not have standing to challenge the rules that govern the counting of votes).[5] Thus, the Court cannot say the Coalition's standing arguments had no "reasonable chance of success." *See Buckler v. MacGregor*, 634 F. App'x 694, 697 (11th Cir. 2015) (affirming the denial of sanctions because "while the plaintiffs' claim was ultimately unsuccessful, it is not clear that it was 'based on a legal theory that ha[d] no reasonable chance of success'").

Second, Rule 11 sanctions "are not justified simply because a judge finds that an argument or theory of liability is wrong on the law." *Tristar Prods., Inc. v. Telebrands Corp.*, No. 3:24cv238/MCR/HTC, 2025 WL 2380723, at *2 (N.D. Fla. Aug. 15, 2025) (citing *De Ford v. Koutoulas*, 2023 WL 3584077, at *4 (M.D. Fla. May 22, 2023)). Here, although the Coalition's standing argument was weak, it was not so frivolous as to warrant sanctions. *See Gulisano*, 34 F.4th at 942 ("When the attorney's evidence is 'merely weak,' but supports a claim under existing law after a reasonable inquiry, sanctions are unwarranted.") (citing *Baker*, 158 F.3d at 524). Indeed, one of the reasons the County waited to file the motion for sanctions until after the Court dismissed the action is that there was a possibility the Court would deny the motion to dismiss and find there was standing. Moreover, the County found

---

[5] In *Bost*, Chief Justice Roberts, writing for the majority, commented that, "Courts sometimes make standing law more complicated than it needs to be." *Bost*, 2026 WL 96707 at *6.

it necessary to file a reply to the Coalition's response in opposition to the motion to dismiss to address and distinguish the Coalition's reliance on *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982). Thus, the fact that the Court concluded the Coalition failed to allege facts sufficient to support either organizational or associational standing, alone, does not warrant Rule 11 sanctions.

Third, the Court also does not find the Coalition brought the suit for an improper purpose. There is no evidence the Coalition brought this suit to "harass, cause unnecessary delay, or needlessly increase the cost of litigation." *See* Fed. R. Civ. P. 11(b)(1). The Coalition attempted to cure defects raised by the County in its first motion to dismiss through an amended complaint.[6] Also, this action spanned just over five months and consisted of only twenty-nine (29) docket entries. Aside from responding to the motion to dismiss and the motion for sanctions, the Coalition did not engage in an extensive motions practice or other litigation tactics such that it amounted to bad faith. Moreover, there is no evidence the Coalition acted with deliberate indifference to facts in filing this suit. *See Davis v. Carl*, 906 F.2d 533, 537 (11th Cir. 1990) (reversing district court's imposition of Rule 11 sanctions and noting, "We might agree that the appellants used poor judgment in pursuing their

---

[6] The Coalition also attempted to dismiss the action with prejudice after it was contacted by the County's counsel regarding the filing of the motion for sanctions. *See* Doc. 30. However, because the Court already entered judgment, the notice of dismissal was ineffective. *See Hertz Corp. v. Alamo Rent-A-Car, Inc.*, 16 F.3d 1126, 1133 (11th Cir. 1994) (holding that motion to dismiss with prejudice after judgment was entered was a nullity).

allegations.  We do *not* perceive in the appellants' conduct, however, the deliberate indifference to obvious facts that compels a court's resort to Rule 11 sanctions."). Finally, the County admits that the suit did not prevent it from taking any action regarding the ship, including removing the ship's smokestacks in anticipation of its sinking.

As the Coalition readily admits, the case was brought to try to save the SS United States from being sunk to the bottom of the ocean.  While the Coalition's emotional connection to the ship was, perhaps, a tide that carried them beyond the sea of effective advocacy for their cause, Rule 11 sanctions are "an extraordinary remedy" that must "be exercised with extreme caution."  *Bigford v. BESM, Inc.*, 2012 WL 12886184, at *2 (S.D. Fla. Oct. 12, 2012) (quoting *Operating Eng'rs Pension Trust v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988)).  As this Court stated in *Tristar Prods., Inc.*, "Rule 11 sanctions should not operate to 'chill attorneys' legitimate enthusiasms and creativity in advancing legal and factual theories.'"  *Tristar Prods., Inc.*, 2025 WL 2380723, at * 2.  And, while the Coalition may have ultimately been unsuccessful in its efforts, the Court is unable to find that the Coalition's conduct in filing this suit constituted "the sort of egregious, abusive, bad-faith conduct required to trigger sanctions or an award of attorney[']s[ ] fees."  *Buckler*, 634 F. App'x at 697 (affirming denial of sanctions).

## IV.    CONCLUSION

Accordingly, it is ORDERED:

1.    Defendant's motion for Rule 11 sanctions (Doc. 31) is DENIED.

2.    Plaintiff's Unopposed Motion to Take Judicial Notice (Doc. 38) is TERMINATED AS MOOT.

DONE AND ORDERED this 20th day of January, 2026.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**